UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| JOHN S. JOHNSON, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 08-194-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| GARY BECKSTROM, Warden, | ) | **& ORDER** |
| | ) | |
| Respondent. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

John Johnson—a Kentuckian serving a life sentence for murder—asks this Court to grant him a writ of habeas corpus on a due process claim that he has not presented to the Kentucky state courts. That request flies in the face of what another Kentuckian wrote for a unanimous Supreme Court more than a century ago in *Ex parte Royall*, 117 U.S. 241, 251 (1886). Federal courts' habeas jurisdiction "should be exercised," Justice John Marshall Harlan wrote for the Court, "in the light of the relations existing, under our system of government, between the judicial tribunals of the Union and of the states, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the constitution." *Id.* Justice Harlan's insight became the "exhaustion doctrine," which generally bars a federal court from granting a writ of habeas corpus to a state prisoner until he has fully exhausted the remedies available in state court. *See* 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The Court recently allowed Johnson to amend his habeas petition to add a new claim that having a "biased" judge preside over his trial and post-conviction proceedings violated due process. R.

77. Because Johnson has never presented this claim to a Kentucky state court, it has not been exhausted. Therefore, it must be dismissed.

## BACKGROUND

Nineteen-year-old Brian Sizemore was backing his truck out of his uncle's driveway when the driver of a passing car fired two shots at him from a 7.62 x 39 millimeter SKS rifle. *Johnson v. Commonwealth*, 892 S.W.2d 558, 559-60 (Ky. 1995). One of the bullets struck Sizemore in the head, killing him. Kentucky authorities charged the petitioner, John Johnson, with the murder. Johnson was tried in the Leslie Circuit Court before Judge Russell Cletus Maricle. After a six-day trial, the jury convicted Johnson on July 19, 1993, and the court sentenced him to life in prison. The Kentucky appellate courts affirmed Johnson's conviction on direct review. Johnson subsequently filed a post-conviction motion in the state trial court, asking that his conviction be set aside on several different grounds. The trial court denied that motion, and the Kentucky appellate courts again affirmed. Johnson then filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this Court on June 23, 2008. R. 1. The lengthy petition raised sixteen different grounds for relief.

On July 12, 2010, Johnson filed a motion seeking leave to amend his habeas petition to add a seventeenth claim stemming from Judge Maricle's recent conviction on federal corruption charges. R. 59. On March 3, 2009, the United States indicted Maricle and seven other co-defendants and charged them with committing various offenses, including buying votes, between 2002 and 2007. *See United States v. Maricle*, No. 09-CR-16-DCR, R. 3 (March 3, 2009). After a lengthy trial, a federal jury convicted Maricle and his co-defendants on March 25, 2010. *Id.*

2

R. 817.  Johnson then sought to parlay Maricle's conviction into a new due process claim in his habeas petition.  R. 59.  Johnson submitted several other motions connected with this claim—(1) a motion for the Court to take judicial notice of certain facts and evidence from Maricle's trial, R. 60; (2) a motion for leave to conduct discovery in search of evidence proving Maricle's bias, R. 61; and (3) a motion seeking appointment of counsel to assist with the discovery, R. 62.

The Court granted Johnson's motion for leave to amend on September 20, 2010.  R. 77.  The Court ordered the respondent to respond to Johnson's new due process claim and denied Johnson's related motions without prejudice as premature.  *Id.*  The respondent filed his supplemental response to Johnson's new claim on November 4, 2010, R. 80, and Johnson promptly filed renewed motions for judicial notice, leave to utilize discovery, and appointment of counsel.  R. 82, 83, 84.  Johnson also filed a motion seeking to rebut the presumption of correctness that attaches to state court factual findings under 28 U.S.C. § 2254(e)(1).  R. 88.

## ANALYSIS

Johnson claims that having Judge Maricle preside over his trial and post-conviction proceedings violated his due process rights in two respects—*first*, because Maricle secured his judicial seat by illegally buying votes and therefore was not a duly elected judge; and *second*, because Maricle was biased against Johnson and wanted to make sure that he was convicted in order to curry favor with (and votes from) the influential Sizemore family.  *See* R. 59-2; R. 88 at 3.  The first iteration of Johnson's claim plainly lacks merit and the second iteration has not been exhausted.

A.

Although the Court cannot *grant* habeas relief on an un-exhausted claim, it can *deny* an unexhausted claim that lacks merit. 28 U.S.C. § 2254(b)(2). Here, the first iteration of Johnson's claim—that his due process rights were violated because Maricle bought his seat on the bench and therefore was not a duly elected judge, *see* R. 88 at 3—plainly lacks merit. First of all, Maricle was only convicted of criminal conduct that began in 2002—nine years *after* Johnson's trial. *United States v. Maricle*, No. 09-CR-16-DCR, R. 3 (March 3, 2009). But even if Johnson can show that Maricle secured his seat on the bench prior to 1993 through illegal means, he still would not prevail. Johnson essentially asks the Court to hold that, because Maricle engaged in some electoral improprieties, he was never validly elected as a state court judge and therefore all of his actions in that office were null and void. That would be an incredible result. It would undo thousands of civil judgments and criminal convictions, throwing the Kentucky court system into chaos. Johnson has not identified, nor has the Court found, any cases establishing that due process requires the retroactive invalidation of acts by public officials who are later convicted of corruption. To the contrary, the Supreme Court has said that "most matters relating to judicial disqualification [do] not rise to a constitutional level." *Caperton v. A.T. Massey Coal Co.*, 129 S. Ct. 2252, 2259 (2009) (quoting *Fed. Trade Comm'n v. Cement Inst.*, 333 U.S. 683, 702 (1948)); *see also Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 820-21 (1986).

Certainly, having a trial judge who may have secured his seat through vote buying or other illegal means offends many things—conscience and a sense of justice among them. But

4

Johnson has cited no authority establishing that, absent a demonstrable impact on the fairness of his particular trial, having such a judge violates the constitution's guarantee of due process. For this reason, other federal courts have refused to entertain claims that state court judges do not legally hold their offices. *See, e.g.*, *Harrell v. Quarterman*, No. G-03-1006, 2007 WL 1729983, at *2 (S.D. Tex. May 24, 2007). That is the proper course here as well. Therefore, because the first iteration of Johnson's due process claim plainly lacks merit, the Court will dismiss it even though it is un-exhausted.

B.

The second iteration of Johnson's due process claim, in contrast to the first, could be valid on the merits. Johnson claims, essentially, that Maricle was so corrupt and so concerned with being reelected that he wanted to make sure that the jury convicted Johnson because doing so would put him in the good graces of the Sizemores—who he claims are one of the county's most politically well-connected and influential families. The Supreme Court has long recognized that it violates due process if the judge "has a direct, personal, substantial pecuniary interest in reaching a conclusion against" the defendant. *Tumey v. Ohio*, 273 U.S. 510, 523 (1927). Therefore, if Johnson can establish that Judge Maricle was primarily concerned with currying favor (and votes) from the Sizemore family instead of giving Johnson a fair trial, he would likely state a valid due process claim.

The problem, though, is that Johnson has not exhausted this claim. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the Court may not grant Johnson habeas relief on any claim for which he has not "exhausted the remedies available in the courts

5

of [Kentucky]." 28 U.S.C. § 2254(b)(1)(A). The reasons for the exhaustion rule are familiar. As "part of the basic structure of federal habeas jurisdiction . . . state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011). State courts therefore get the first crack at resolving any constitutional claims. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). Accordingly, this Court "cannot grant habeas relief if there still is a potential state remedy for the state courts to consider." *Wagner v. Smith*, 581 F.3d 410, 415 (6th Cir. 2009); *see* § 2254(c).

Although Johnson is asserting this claim for the first time now—more than seventeen years after his conviction—he still has an available forum for it in Kentucky state court. In Kentucky, a criminal defendant has three opportunities to challenge his conviction. First, he can raise properly preserved challenges on direct review. Second, he can file a petition in the trial court collaterally attacking his conviction under Rule 11.42 of the Kentucky Rules of Criminal Procedure. The petition must include "all grounds for holding the sentence invalid of which the [defendant then] has knowledge." Ky. R. Crim. P. 11.42(1), (3). If the defendant knows of a ground for vacating his conviction at the time he files his Rule 11.42 petition but does not raise it, that ground is waived. *See Hodge v. Haeberlin*, 579 F.3d 627, 637-38 (6th Cir. 2009) (citing *Crick v. Commonwealth*, 550 S.W.2d 534, 535 (Ky. 1977)). If the defendant thereafter uncovers new grounds for setting aside his conviction—grounds that he could not have raised on direct review or in his Rule 11.42 petition—he may raise them in a petition in the trial court under Rule 60.02 of the Kentucky Rules of Civil Procedure.[1] *Id.* at 638 (citing *Baze v. Kentucky*, 276

---

[1] Although it is part of the Kentucky Civil Rules, Rule 60.02 applies in criminal cases as well. *See Gross v. Commonwealth*, 648 S.W.2d 853, 856 (Ky. 1983).

S.W.3d 761, 765 (Ky. 2008)). Rule 60.02 allows a trial court to set aside its final judgment for "any . . . reason of an extraordinary nature justifying relief," Ky. R. Civ. P. 60.02, including claims that the defendant's conviction violates the United States Constitution. *See Gross v. Commonwealth*, 648 S.W.2d 853, 856 (Ky. 1983).

In Johnson's case, direct review is long over, and the Kentucky courts have already rejected his one Rule 11.42 petition. But Johnson can still present this new due process claim in a Rule 60.02 petition. Johnson asserts that, because the claim relies principally on facts brought to light in Judge Maricle's 2010 federal corruption trial, he could not have advanced the claim previously. R. 59-1 at 12. That makes the claim an ideal candidate for Rule 60.02. *See Baze*, 276 S.W.3d at 765-66; *Gross*, 648 S.W.2d at 856. Decisions issued by both the Sixth Circuit and this Court have recognized that, where a Kentucky criminal defendant can still raise a claim in a Rule 60.02 petition, he has not properly exhausted his state court remedies. *See, e.g.*, *Collins v. Million*, 121 F. App'x 628, 631 (6th Cir. 2005) (no exhaustion where defendant could have challenged his sentence under Rule 60.02 but had not); *Greenwell v. Rees*, No. 85-5463, 1985 WL 13904, at *1 (6th Cir. Oct. 24, 1985) (noting that "petitioner may have exhausted his [claim] by his state collateral attack under Kentucky Rule 60.02"); *Ingram v. Wingo*, 297 F. Supp. 1344, 1345 (E.D. Ky. 1969) (no exhaustion where defendant had not filed post-conviction challenge under either Rule 11.42 or Rule 60.02).

In resistance to this conclusion, Johnson argues that he should not have to present his new claim in a Rule 60.02 petition in the state trial court because the current presiding judge, Oscar Gayle House, was involved in the same vote buying scheme for which Maricle was convicted.

7

R. 81 at 3-5. Johnson therefore urges the Court to find that "circumstances exist that render [the state's corrective] process ineffective to protect [his] rights," which would excuse AEDPA's exhaustion requirement and allow the Court to reach the merits of the claim. 28 U.S.C. § 2254(b)(1)(B)(ii). Admittedly, this argument has some superficial appeal. Requiring Johnson to present his claim based on Judge Maricle's criminal conspiracy to a state court judge who was allegedly involved in that same conspiracy would seem to border on the Kafkaesque. But, upon closer examination, Johnson has not made a sufficient showing that he should be excused from exhausting his state court remedies.

First of all, if Johnson is concerned about Judge House's impartiality, he can file a motion asking House to recuse. *See Bailey v. Bailey*, 474 S.W.2d 389, 391 (Ky. 1971). A Kentucky statute requires a state court judge to recuse himself where he has "a personal bias concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings," or "[w]here he has knowledge of any other circumstances in which his impartiality might reasonably be questioned." Ky. Rev. Stat. § 26A.015(2). If Judge House refuses to recuse and denies Johnson's Rule 60.02 petition, Johnson can raise House's failure to recuse as a legal error on appeal. The Kentucky appellate courts have been sympathetic to such claims in the past. *See, e.g.*, *Carter v. Commonwealth*, 641 S.W.2d 758, 759-60 (Ky. Ct. App. 1982).

But even if Judge House does not recuse, Johnson's objection to having him hear his Rule 60.02 petition only really has purchase with respect to the first iteration of his due process claim—that Judge Maricle was not a duly elected judge because his bought his seat on the bench. Proving that claim would entail a wide-ranging inquiry to establish that Maricle engaged in vote

8

buying prior to 1993. If, indeed, Judge House was involved in that same vote buying conspiracy, he very well might be reluctant to allow a full investigation for fear that his involvement would be further exposed. But, as explained above, this first iteration of Johnson's due process claim lacks merit. Therefore, even if Judge House might be reluctant to allow Johnson full discovery into this claim, it would not cause Johnson any prejudice.

Johnson's objection to having Judge House adjudicate his Rule 60.02 petition has much less purchase with respect to the second version of his claim—the only one with any possible merit. Under that version, Johnson will try to show that Judge Maricle was biased against him *during his trial* because Maricle wanted to curry favor with the Sizemore family, thereby helping his chances in an upcoming judicial election. There is no indication that Judge House would be unfit to hear, or otherwise biased against, this claim. First of all, Judge House was never indicted in the Maricle case, and the only pieces of evidence that Johnson points to from Maricle's criminal trial establishing House's possible involvement are relatively weak. One government witness testified that Maricle bought votes for House in 1983, and another government witness testified that he gave between $8,000 and $9,000 in drug money to support Maricle's and House's campaigns. *See United States v. Maricle*, No. 6:09-16-DCR, 2010 WL 291750, at *2, *9 (E.D. Ky. Jan. 21, 2010). This testimony establishes, at most, that Judge House may have had votes purchased on his behalf and may have received some improper campaign contributions almost twenty years ago. Even assuming that these allegations are accurate (a big assumption, given that House was not involved in the trial and therefore never had an opportunity to cross-examine or otherwise impeach the witnesses), they would likely have little or no impact on

House's ability to evaluate whether Maricle was biased against Johnson. That inquiry will focus on Maricle's conduct *during Johnson's 1993 trial*. Ruling on the claim will require answering questions such as: Did Maricle exhibit discernible bias against Johnson or in favor of the prosecution? Is there any evidence indicating that Maricle treated Johnson's trial as an opportunity for securing votes? Did Maricle have any improper contact with the Sizemore family? Even if House and Maricle were at one time involved in a vote buying scheme together, it is unlikely that it would impact House's ability to answer the relevant questions impartially. And, even in the unlikely event that Judge House's consideration of Johnson's claim is somehow tainted by his alleged prior involvement with Maricle, Johnson can appeal Judge House's decision on his Rule 60.02 petition to the Kentucky Court of Appeals and the Kentucky Supreme Court, where he will receive independent review. *See Baze v. Commonwealth*, No. 2005-SC-0889-MR, 2006 WL 1360281, at *1 (Ky. 2006) (reviewing trial court's denial of Rule 60.02 petition).

The allegations of corruption that Johnson has leveled against Judge House—based on a few pieces of testimony from a trial in which House did not participate—are simply not enough to overcome the "strong presumption in favor of requiring [Johnson] to pursue his available state remedies," *Granberry v. Greer*, 481 U.S. 129, 131 (1987), especially given Johnson's ability to seek Judge House's recusal. Johnson must give the Kentucky courts the first crack at ruling on this new claim.

C.

Johnson's failure to exhaust the one possibly meritorious version of his due process claim creates some procedural problems. As the Sixth Circuit explained in *Wagner*, 581 F.3d at 419, district courts faced with mixed habeas petitions—petitions containing both exhausted and unexhausted claims—have four options. The court can (1) "dismiss the mixed petition in its entirety"; (2) "stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims"; (3) "permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims"; or (4) "ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit." *Id.* (internal citations omitted). Because the Court has not yet assessed the sixteen other claims in Johnson's habeas petition, it cannot at this point determine which of these four options is the most appropriate. If all of his other claims either lack merit or are procedurally barred, the Court can deny his petition in its entirety. If, on the other hand, any of Johnson's other claims are both procedurally proper and meritorious, the Court will have to decide what to do with this unexhausted claim because the Court cannot grant relief on a mixed petition. *See Rhines v. Weber*, 544 U.S. 269, 274-75 (2005). The Court will do its best to rule on Johnson's claims in short order, and will determine what to do with his unexhausted due process claim at that time.

D.

Because Johnson has not exhausted his due process claim, the Court cannot consider it in his habeas petition. Accordingly, the Court will deny as moot the pending motions related to

this claim, specifically Johnson's motions for judicial notice, R. 82, to utilize discovery, R. 83, and for appointment of counsel, R. 84.

Johnson has also filed a motion seeking to rebut the presumption of correctness that attaches to state court findings of fact under 28 U.S.C. § 2254(e)(1). R. 88. Section 2254(e)(1) provides that the habeas petitioner "shall have the burden of rebutting the presumption . . . by clear and convincing evidence." Johnson makes a global assault on Judge Maricle's conduct of the entire trial, alleging that because he bought his seat on the bench and was trying to curry favor with the Sizemore family none of his rulings or findings of fact should be presumed to be correct. R. 88 at 3-4. Johnson then walks through Maricle's rulings as they pertain to each of his sixteen claims and sets forth why he believes Maricle's rulings exhibit bias. *Id.* at 4-31. Johnson has not established by "clear and convincing evidence" that Maricle was biased against him, much less that any possible bias infected all of Maricle's rulings and findings of fact. Accordingly, a global finding that AEDPA's presumption of correctness should not apply to the state court's factual findings is inappropriate. Therefore, the Court will deny Johnson's motion. The Court will consider the individualized objections that Johnson makes to Judge Maricle's findings as to each of his claims when the Court rules on those claims in short order.

## CONCLUSION

For these reasons, it is **ORDERED** as follows:

(1) The due process claim in Johnson's amended habeas petition, R. 59, is **DENIED IN PART** and **STAYED IN PART** as set forth above. The Court will decide what to do with the one possibly valid (but unexhausted) iteration of that claim—that Judge Maricle was biased against him during his trial—when it rules on Johnson's remaining claims.

(2) Johnson's motion for judicial notice, R. 82, leave to utilize discovery, R. 83, appointment of counsel, R. 84, and to rebut the presumption of correctness, R. 88, are **DENIED**.

(3) Johnson's motion for leave to supplement his Reply with the Kentucky Supreme Court's decision in *Hollon v. Commonwealth*, R. 89, is **GRANTED**. The respondent, as he requested, R. 93, shall have thirty days from the date of this Order to file a supplement to his Rule 5 answer addressing *Hollon*.

This the 7th day of March, 2011.



Signed By:
*Amul R. Thapar*
United States District Judge